**Ronda S. CRAIG, Plaintiff–Appellant,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant–Appellee.**

**No. 94–2590.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 2, 1995.

Decided Feb. 23, 1996.

**ARGUED:** Tomi White Bryan, Tomi Bryan & Associates, Greensboro, North Carolina, for Appellant. Cheryl Lynn Nikonovich–Kahn, Assistant Regional Counsel, Office of General Counsel, Region IV, Department of Health & Human Services, Atlanta, Georgia, for Appellee. **ON BRIEF:** Frank W. Hunger, Assistant Attorney General, Walter C. Holton, Jr., United States Attorney, Bruce R. Granger, Chief Counsel, Region IV, Mack A. Davis, Deputy Chief Counsel for Social Security Litigation and Programs, Mary Ann Sloan, Principal Regional Counsel, Social Security Disability Litigation, Ronald L. Paxton, Assistant Regional Counsel, Office of General Counsel, Region IV, Department of Health & Human Services, Atlanta, Georgia, for Appellee.

Before WILKINS, LUTTIG, and WILLIAMS, Circuit Judges.

Affirmed in part, vacated in part, and remanded by published opinion. Judge LUTTIG wrote the opinion, in which Judge WILKINS and Judge WILLIAMS joined.

## OPINION

LUTTIG, Circuit Judge:

Ronda S. Craig appeals from a judgment of the district court upholding the determination of the Secretary of Health and Human Services that she was ineligible for disability insurance and Supplemental Security Income. For the reasons that follow, we remand the case to the ALJ for further consideration.

### I.

Craig, currently 34, began seeing Dr. David Keller, a family practitioner, in 1986. She complained of headaches, back pain, leg pain, and hip pain. Between May 1986 and December 1992, Craig visited Dr. Keller some 31 times, complaining of similar pains, as well as cramping, dizziness, fatigue, and swelling of the face, feet, and legs. In that time, plaintiff's various diagnoses included chronic back pain, chronic tension headache, lumbrosacral strain, possible carpal tunnel syndrome, probable myofacial pain syndrome, fibrocytis syndrome, epigastric pain, and possible depression. In January 1990, Craig underwent an x-ray of the cervical spine which revealed degenerative arthritic change anteriorly at C3–4, C4–5, and C5–6 and that there was very early disk space narrowing. J.A. at 118. At the same time, a CT brain scan showed "normal." *Id.* In September of 1991, Dr. Keller performed MRI scans of the cervical and lumbrosacral spines, both of which were "normal." J.A. at 191.

On June 18, 1992, Dr. Keller wrote a letter stating that Craig was disabled as of June 1, 1992, and that she would be disabled "indefinitely" because of "aching all over." J.A. at 136. On that same day, June 18, Dr. Keller wrote Dr. Doug Lemley, a rheumatologist, a letter of referral for Craig, in which he stated that she had "no objective evidence of any joint symptoms" and that her lab work was "normal" except for high cholesterol and triglyceride levels. J.A. at 132. He made no mention of any disability in this letter. Dr. Lemley examined Craig and concluded that there were "[n]o signs of active inflammation about any of the joints at this time" and "adequate range of motion at all sites." J.A. at 129. He also noted that she had complained of "occasional" swelling of the hands, feet, and knees.

On September 23, 1992, Craig had a session with Robert Madtes, a physical therapist to whom she was referred by Dr. Keller. Madtes found that she had "multiple muscle involvement with pain and decreased flexibility," but he did not declare her disabled or suggest that she be restricted in her activities. J.A. at 210.

Craig is still able to sweep occasionally, mop once a month, do some dusting, sometimes mend clothes, do laundry once a week, go grocery shopping once a month, cook twice a week, wash dishes once a week, attend church occasionally, sometimes teach Sunday School, and drive occasionally. J.A. at 40–42. Nevertheless, Craig alleges that

she has cramps in her whole body, her joints hurt constantly (specifically her knees, legs, feet, and hands), and she experiences severe headaches. J.A. at 34. She also testified that she cannot sleep very much, that she has trouble lifting a plate with her right arm, that lifting a two-liter bottle with her left arm causes pain, and that she can only blow dry the front of her hair because she cannot hold the blow dryer long enough to do the back. J.A. at 44–45.

On June 23, 1992, Craig filed for Title II disability insurance benefits and for Title XVI Supplemental Security Income.[1] The applications were denied twice, and, on December 31, 1992, Administrative Law Judge Emanuel C. Edwards conducted a hearing and denied benefits. He found that, although Craig had "severe impairments of the musculoskeletal system," her subjective allegations of pain were not credible, and she had the residual functional capacity to perform medium work, which included her past relevant work, as a seamstress. J.A. at 17. After the Appeals Council denied Craig's request for review, the federal district court adopted the magistrate's recommendations and granted the Secretary's motion for summary judgment of Craig's complaint for review. This appeal followed.

## II.

Under the Social Security Act, we must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard. 42 U.S.C. §§ 405(g), 1383(c)(3); *Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir.1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated*

*Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); "[i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir.1966). In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the Secretary. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990)."Where conflicting evidence allows reasonable minds to .differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." *Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir.1987). The issue before us, therefore, is not whether Craig is disabled, but whether the ALJ's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Coffman,* 829 F.2d at 517.

### A.

Craig's first contention is that the ALJ failed to follow the mandate of *Coffman,* 829 F.2d at 517, that "the opinion of a claimant's treating physician be given great weight and may be disregarded only if there is persuasive contradictory evidence." Here, the ALJ found that

> [i]t is obvious that [Dr. Keller's] opinion [that Craig is "indefinitely" disabled] is based solely on claimant's subjective symptoms of aching all over and not supported by clinical findings or laboratory test results. In fact, Dr. Keller's own office notes do not even suggest that claimant would be precluded from performing sustained work activity. In the claimant's progress notes, Dr. Keller repeatedly made the same remarks he made in his office notes of July 30, 1992, i.e., *no* cervical adenopathy; *normal* thyroid; lungs *clear* to auscultation;

1. *The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides ben-*

efits *to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical. See also Bowen v. City of New York, 476 U.S. 467, 469– 470, 106 S.Ct. 2022, 2024–25, 90 L.Ed.2d 462 (1986).*

cardiac rhythm *regular* with *no* gallops or murmurs; abdomen soft but diffusely tender; *no* hepatosplemegaly or mass; patient tender all over with pain to palpation in all muscle groups, but *no joint swelling or limitation of range of motion;* muscle strength *normal* in upper and lower extremities.

J.A. at 15 (emphases added).

Circuit precedent does not require that a treating physician's testimony "be given controlling weight." *Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir.1992). In fact, 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2) (emphasis added) both provide,

> [i]f we find that a treating source's opinion on the issue(s) of the nature and severity of [the] impairment(s) is well supported by medically acceptable *clinical and laboratory diagnostic techniques* and is *not inconsistent with the other substantial evidence* in [the] case record, we will give it controlling weight.

By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. All Keller gave here was a conclusory opinion based upon Craig's subjective reports of pain. His own medical notes did not confirm his determination of "disability." On the same day, he wrote Dr. Lemley and mentioned nothing about any disability; indeed, he noted that there was "no objective evidence of any joint swelling." The MRI was "normal." The only positive laboratory evidence,[2] the January 1990 x-ray, showed merely very early disc space narrowing, and, on another occasion, Dr. Keller noted merely that Craig's "headaches *may* be due *in part* to arthritis and/or disc disease." J.A. at 154 (emphasis added). Moreover, Dr. Lemley found "[n]o signs of active inflammation about any of the joints" and "adequate range of motion at all sites." J.A. at 129. And, Craig remained able to perform significant housework and worked until June 1, 1992, as a seamstress.

Thus, sufficient evidence justifies the ALJ's rejection of Dr. Keller's conclusory opinion and his finding that the record contains persuasive contradictory evidence (including Keller's own notes).

### B.

Craig next argues that the ALJ erred in not considering expressly her physical therapist's report because, under *Gordon v. Schweiker,* 725 F.2d 231, 236 (4th Cir.1984), a denial of benefits is not supported by substantial evidence if the ALJ "has[not] analyzed all evidence and ... sufficiently explained the weight he has given to obviously probative exhibits." On September 23, 1992, Craig was examined by Madtes, a physical therapist, who found her cervical spine flexion to be 75%, extension 25%, lateral side bend 75%, side rotation 90%, and shoulders lacking end range flexion and abduction by 10 to 12 degrees. As treatment, the therapist prescribed "home exercise," "massage," "ultrasound," and "moist heat." J.A. at 209. Because the ALJ did not expressly consider Madtes's report, Craig argues that the ALJ's findings are not supported by substantial evidence.

In response, the Secretary notes that a physical therapist does not even qualify as an "acceptable medical source" under the regulations, but rather would qualify only as an "other source," whose opinions are entitled to significantly less weight. 20 C.F.R. §§ 404.1513, 416.913. Moreover, Madtes's findings are based on only one visit and are contradicted by the findings of a physician, Dr. Lemley, who examined Craig that same year and found an adequate range of motion at all sites. J.A. at 129. Regardless, Madtes' report did not even find Craig "disabled," nor did Madtes prescribe significant treatment. Altogether, therefore, the ALJ's consideration of the medical evidence was more than adequate.

### C.

Craig next contends, relying upon cases from the Second, Sixth, and Seventh

---

2. Craig argues that the fact that Keller observed Craig (when she complained about the pain) transforms his observations into "clinical evidence." If this were true, it would completely vitiate any notion of objective clinical medical evidence. There is nothing objective about a doctor saying, without more, "I observed my patient telling me she was in pain."

Circuits, *Bluvband v. Heckler,* 730 F.2d 886, 892 (2d Cir.1984); *Cannon v. Harris,* 651 F.2d 513, 519 (7th Cir.1981); *Thompson v. Sullivan,* 933 F.2d 581, 585–86 (7th Cir.1991); and *Lashley v. Secretary, Health & Human Serv.,* 708 F.2d 1048, 1051–52 (6th Cir.1983), that, because she declined to be represented by counsel at the hearing, the ALJ had a heightened duty of care to adequately develop the record, and that the ALJ failed to do so. Apparently unbeknownst to Craig's appellate counsel, our own circuit has also held that in *pro se* cases, ALJs have "a duty to assume a more active role in helping claimants develop the record." *Sims v. Harris,* 631 F.2d 26, 28 (4th Cir.1980). In the instant case, however, the ALJ fully discharged the duty that our precedent contemplates. The ALJ questioned Craig about all relevant matters, and also questioned Craig's sister and mother-in-law as well. The ALJ inquired about, *inter alia,* her education level (ninth grade), her ability to read and write, her living conditions, her former work, her daily activities, and her subjective complaints of pain. Moreover, he reviewed all of her medical records in painstaking detail.[3]

### D.

▇ Craig also challenges whether substantial evidence supports the ALJ's conclusion that she could perform medium level work and that she could return to her prior relevant work as a seamstress. Craig claims that, in determining she could do medium work, the ALJ did not consider all relevant evidence, specifically, Madtes's assessment of some limited mobility, a DSS interviewer's one-time notation that Craig had a "swollen" hand, and Dr. Keller's letter that she could not perform any physical activity.[4] All of these factors were before the ALJ, and, nonetheless, in light of the objective medical evidence and Craig's own testimony, there was more than substantial evidence to support his conclusion that Craig could perform medium level work. Likewise, substantial evidence supported the ALJ's conclusion that Craig's prior relevant work as a seamstress qualified as medium level work. Medium level work requires "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c); 416.967(c). Craig testified that the heaviest weights that a seamstress was required to lift were between 35 and 50 pounds, that her job was primarily seated (with frequent standing), and that she had to bend and reach frequently (but not walk). J.A. at 37–39, 93. This work falls squarely within the parameters of medium work, as defined in the regulation.

### E.

Finally, Craig contends that the ALJ applied the wrong standard in evaluating her subjective complaints of pain. Although Craig's argument on this point is difficult to follow, it appears that she believes that the law forbids the ALJ finding her testimony not credible. Instead, presumably, the ALJ was obliged to accept, without more, her subjective assertions of disabling pain and her subjective assessment of the degree of that pain. Of course, that is not and has never been the law in this circuit. As was observed in *Mickles v. Shalala,* 29 F.3d 918, 922 (4th Cir.1994) (Luttig, J., concurring in the judgment), and as we hold today, subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant.

▇ The reasoning for such a holding was explained in *Mickles,* essentially verbatim, as follows. A person is "disabled" under

---

3. Likewise, Craig's contention that the hearing was too brief to be meaningful is meritless. Here, the ALJ adequately questioned Craig and her witnesses and considered the relevant evidence. We cannot conclude, therefore, that Craig's hearing was too brief to be meaningful. *See Kelley v. Heckler,* 761 F.2d 1538, 1540–41 (11th Cir.1985) (*per curiam* ).

4. Also, Craig argues that the wrist splints Dr. Keller prescribed for her possible carpal tunnel syndrome make her unable to work, and that the ALJ neglected to consider this disability. The obvious failing in this argument, however, is that Keller prescribed the wrist splints in 1990, and Craig worked uninterrupted for two years thereafter.

the Social Security Act, and therefore potentially eligible for SSI benefits, if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. #8E8E #1382c(a)(3)(A) & 423(d)(1)(A). A "physical or mental impairment" is further defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 1382c(a)(3)(C) & 423(d)(3). Thus, for disability to be found, an underlying medically determinable impairment resulting from some demonstrable abnormality must be established. While the pain caused by an impairment, independent from any physical limitations imposed by that impairment, may of course render an individual incapable of working, see Myers v. Califano, 611 F.2d 980, 983 (4th Cir.1980), allegations of pain and other subjective symptoms, without more, are insufficient. As we said in Gross v. Heckler, "[p]ain is not disabling per se, and subjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof." 785 F.2d 1163, 1166 (4th Cir.1986) (quoting Parris v. Heckler, 733 F.2d 324, 327 (4th Cir.1984)); see also 20 C.F.R. §§ 416.928(a) & 404.1528(a) ("[A claimant's] statements ... alone ... are not enough to establish that there is a physical or mental impairment.").

In order to make this statutory requirement even more plain, Congress in 1984 amended Title II of the Social Security Act, purportedly to codify the regulatory standard for evaluating pain. See S.Rep. No. 466, 98th Cong., 2d. Sess. 23–24 (1984); H.R. Conf. Rep. No. 1039, 98th Cong., 2d Sess. 29 (1984), reprinted in 1984 U.S.C.C.A.N. 3080, 3087–88. The amendment, in language which closely paralleled the Secretary's 1980 regulations, see 20 C.F.R. §§ 416.929 & 404.1529 (1983), provided that

> [a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; *there must be medical signs and findings,* established by medically acceptable clinical or laboratory diagnostic techniques, *which show the existence of a medical impairment* that results from anatomical, physiological, or psychological abnormalities *which could reasonably be expected to produce the pain or other symptoms alleged* and which, when considered with all the evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory diagnostic techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

42 U.S.C. § 423(d)(5)(A) (emphasis added). This standard was made applicable to SSI determinations as well by an amendment to Title XVI incorporating section 423(d)(5) by reference. See 42 U.S.C. § 1382c(a)(3)(G).

■■■ Interpreting section 423(d)(5)(A), this court held that in order for pain to be found disabling, there must be objective medical evidence establishing some condition that could reasonably be expected to produce the pain alleged. *Foster v. Heckler,* 780 F.2d 1125, 1129 (4th Cir.1986).[5] However, while a

---

5. In *Foster,* we also found that § 423(d)(5)(A) was consistent with our prior precedents. *Id.* at 1129 n. 7; *see also Thompson v. Sullivan,* 980 F.2d 280, 282 (4th Cir.1992) ("[Section 423(d)(5)(A)] adopted the substance of our prior rule."); *Hyatt v. Sullivan,* 899 F.2d 329, 333 n. 4 (4th Cir.1990) (*Hyatt III*) ("[Section 423(d)(5)(A)] and Fourth Circuit pain law are not inconsistent."). *Compare Shively v. Heckler,* 739 F.2d 987, 990 (4th Cir.1984) *with* 42 U.S.C. § 423(d)(5)(A). One of those prior precedents, *Myers,* could be read to be in conflict with § 423(d)(5)(A)'s requirement of objective proof of an underlying impairment which could reasonably be expected to cause the disabling pain a claimant alleges, *see* 611 F.2d at 983, and has at least once been so read, *see Thompson,* 980 F.2d at 283 (characterizing *Myers* as holding "that

claimant must show by objective evidence the existence of an underlying impairment that could cause the pain alleged, "there need not be objective evidence of the pain itself." *Id.* (*quoting Green v. Schweiker*, 749 F.2d 1066, 1070–71 (3d Cir.1984)); *accord Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir.1990) (explaining that § 423(d)(5)(A) requires "a claimant to show objective medical evidence of some condition that could reasonably be expected to produce the pain alleged, not objective evidence of the pain itself"); *Hyatt III*, 899 F.2d at 332 (stating that § 423(d)(5)(A) "requires objective medical evidence of an underlying condition that could reasonably produce the pain alleged"); *Hatcher v. Secretary, Dept. of Health & Human Serv.*, 898 F.2d 21, 24 (4th Cir.1989) ("[Section 423(d)(5)(A)] . . . requires medical evidence of an impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' "); *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir.1989) ("[W]hile there must be medical evidence of some condition that could reasonably produce the pain, there need not be objective evidence of the pain itself or its intensity."); *Gross*, 785 F.2d at 1166 (upholding denial of benefits where evidence failed to show any abnormality which would explain claimant's pains). Under these cases, once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain, such as heat, swelling, redness, and effusion. *See Jenkins*, 906 F.2d at 109.

Although it still appears in the statutory codification and decisions have continued to be rendered under it, *see, e.g., Jenkins*, 906 F.2d at 108, section 423(d)(5)(A) is applicable only to SSDI and SSI eligibility determinations made prior to January 1, 1987. *See* Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, § 3(a)(3), 98 Stat. 1794, 1799 (1984); *see also Hyatt III*,

899 F.2d at 332 n. 1. The statute is thus no longer effective, but its standard for the evaluation of pain has recently been incorporated almost *in haec verba* into the Social Security regulations.

On November 14, 1991, the Secretary, acting pursuant to the rulemaking authority delegated by Congress in 42 U.S.C. § 1302, substantially revised the regulations governing the evaluation of pain in SSDI and SSI disability determinations. *See* 20 C.F.R. §§ 404.1529, 416.929. These regulations provide the authoritative standard for the evaluation of pain in disability determinations, *see Pope v. Shalala*, 998 F.2d 473, 485–86 (7th Cir.1993), and control all determinations made since their effective date, including the instant case.

Sections 416.929 and 404.1529, governing disability determinations, incorporate the standard set forth in section 423(d)(5)(A) and explain that standard each with more than three and one half pages of small type. These lengthy regulations begin by emphasizing the importance of objective evidence in determining whether a claimant is disabled by pain:

> In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. . . . However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which establish that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled. In

pain itself is an impairment that can render a person disabled"). However, given the rather plain requirements expressed in the statutory language, the terms of which have since been incorporated into the governing regulations, and

our consistent interpretation of those terms, we have previously declined to so construe *Myer, see, e.g., Foster*, 780 F.2d at 1129 n. 7, and we again decline to do so today.

evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you.... *We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work ....*

20 C.F.R. §§ 416.929(a) & 404.1529(a) (emphasis added).

■ Under these regulations, the determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing

the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and *which could reasonably be expected to produce the pain or other symptoms alleged.*

20 C.F.R. §§ 416.929(b) & 404.1529(b) (emphasis added); *cf.* 42 U.S.C. § 423(d)(5)(A) ("[T]here must be medical signs and findings ... which show the existence of a medical impairment ... which could reasonably be expected to produce the pain or other symptoms alleged...."). It is significant that the current regulations, like the statute upon which they were based, *see* 42 U.S.C. § 423(d)(5)(A), and paralleling the regulations which that statute purported to codify, *see* 20 C.F.R. §§ 416.929, 404.1529 (1983), were drafted using the definite article "the" and the adjective "alleged." [6] Therefore, for pain to be found to be disabling, there *must* be shown a medically determinable impair-

ment which could reasonably be expected to cause not just pain, or some pain, or pain of some kind or severity, but *the pain the claimant alleges she suffers.* The regulation thus requires at the threshold a showing by objective evidence of the existence of a medical impairment "which could reasonably be expected to produce" the actual pain, in the amount and degree, alleged by the claimant. *Cf. Jenkins,* 906 F.2d at 108 (explaining that 42 U.S.C. § 423(d)(5)(A) requires "objective medical evidence of some condition that could reasonably be expected to produce the pain alleged"); *Foster,* 780 F.2d at 1129 (same).

This threshold test does not, as the regulation is careful to emphasize, entail a determination of the "intensity, persistence, or functionally limiting effects" of the claimant's asserted pain. *See* 20 C.F.R. §§ 416.929(b) & 404.1529(b). At this stage of the inquiry, the pain claimed is not directly at issue; the focus is instead on establishing a determinable underlying impairment—a statutory requirement for entitlement to benefits, *see* 42 U.S.C § 1382c(a)(3)(A)—which could reasonably be expected to be the cause of the disabling pain asserted by the claimant.

■ There is, of course, a fundamental difference between objective evidence of pain (which is not required) and objective evidence of a medical condition which could cause the pain alleged (which is). Requirement of the former is obviously not the law, for the simple reason that pain, a subjective phenomenon, although sometimes objectively verifiable, often will not be. Objective evidence of the pain the claimant feels is thus, quite sensibly, *not* required for entitlement to benefits. 20 C.F.R. §§ 416.929(c) & 404.1529(c). However, the latter—objective evidence of a condition "which could reason-

**6.** 20 C.F.R. §§ 416.929(b) & 404.1529(b) (emphasis added) both provide that,

[y]our symptoms ... will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present. Medical signs and laboratory findings ... must show the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and *which could reasonably be expected to produce the pain or other symptoms alleged.*

*See also Jenkins,* 906 F.2d at 108 ("[T]his court has interpreted [42 U.S.C. § 423(d)(5)(A) ] as requiring a claimant to show objective medical evidence of some condition *that could reasonably be expected to produce the pain alleged,* not objective evidence of the pain itself." (emphasis added)). Even if our precedents were contrary to this regulation, which they are not, these regulations would be controlling. *See Pope,* 998 F.2d at 485–86.

ably be expected to produce the pain or other symptoms alleged"—equally sensibly, *is* required by the Secretary's regulation. 20 C.F.R. §§ 416.929(b) & 404.1529(b).

Indeed, that such a requirement is part of the regulatory scheme is confirmed by the portions of the regulations providing that, in the disability hearing process, before the ALJ, and before Appeals Council, expert medical advice may be sought and considered in determining whether an "impairment[ ] could reasonably be expected to produce [the claimant's] alleged symptoms." *Id.*

It is only *after* a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated. *See* 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1). Under the regulations, this evaluation must take into account not only the claimant's statements about her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings, *see id.*; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), *see* 20 C.F.R. §§ 416.929(c)(2) & 404.1529(c)(2); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it, *see* 20 C.F.R. §§ 416.929(c)(3) & 404.1529(c)(3).

▬ The regulations, as did the statute, *see* 42 U.S.C. § 423(d)(5)(A) ("Objective medical evidence of pain or other symptoms ... must be considered."), specifically provide for the consideration of objective medical evidence of the pain (if any such evidence exists) in the evaluation of its intensity and persistence. However, because pain is subjective and cannot always be confirmed by objective indicia, claims of disabling pain may not be rejected "*solely* because the available objective evidence does not substantiate [the claimant's] statements" as to the severity and persistence of her pain. 20 C.F.R. §§ 416.929(c)(2) & 404.1529(c)(2) (emphasis

added); *see also Walker,* 889 F.2d at 49 ("[T]here need not be objective evidence of the pain itself or its intensity."); *Foster,* 780 F.2d at 1129 (same). That is, once a medically determinable impairment which could reasonably be expected to produce the pain alleged by the claimant is shown by objective evidence, the claimant's allegations as to the severity and persistence of her pain may not be dismissed merely because objective evidence of the pain itself (as opposed to the existence of an impairment that could produce the pain alleged), such as inflamed tissues or spasming muscles, are not present to corroborate the existence of pain.

This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers:

> We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your medical history, the medical signs and laboratory findings, and statements by your treating or examining physician or psychologist or other persons about how your symptoms affect you. *Your symptoms, including pain, will be determined to diminish your capacity for basic work activities ... to the extent that your alleged functional limitations and restrictions due to symptoms, such*

*as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.*

20 C.F.R. §§ 416.929(c)(4) & 404.1529(c)(4) (emphasis added); *cf.* 42 U.S.C. § 423(d)(5)(A) ("[T]here must be ... a medical impairment ... which, when considered with all the evidence ... (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability."); *Gross*, 785 F.2d at 1166 (affirming finding that allegations of pain were incredible where medical evidence did not show an underlying impairment); *Shively v. Heckler*, 739 F.2d 987, 990 (4th Cir.1984) (same; pre-statute).

In the instant case, the ALJ did not expressly consider the threshold question of whether Craig had demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain she alleges. Instead, the ALJ proceeded directly to considering the credibility of her subjective allegations of pain. J.A. at 16. Accordingly, we remand to the ALJ to determine whether Craig has an objectively identifiable medical impairment that could reasonably cause the pain of which she complains.[7] If the ALJ concludes that she does, then, and only then, should it undertake an assessment into the credibility of Craig's subjective claims of pain.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED.*

---

**7.** The Secretary also argues, correctly, that, based on *Cauthen v. Finch*, 426 F.2d 891, 892 (4th Cir.1970), because Craig conceded in her district court brief that, for six years, she has had "the same symptoms and the same complaints ... the same in terms of type and severity for six years," J.A. (Vol.2) at 24, and because it is undisputed that she worked as a seamstress for four of those years, she cannot now, as a matter of law, be found disabled without a claim of significant deterioration of her condition. Craig argues in her reply brief before this court that her symptoms did get worse in 1992, and points to a few things in the record that support that assertion. She ignores, however, the fact that her district court brief previously conceded just the opposite. On remand, the ALJ should determine whether Craig's condition has actually deteriorated significantly from the time when she was admittedly able to work and should also determine the reason for her vacillating stories as to any alleged deterioration.