UNITED STATES DISTRICT COURT 
 FOR THE DISTRICT OF MARYLAND 

KIMBERLY SOILEAU, * 

 Plaintiff, * 

v. * Civil Action No. EA-23-1404 

COMMISSIONER, SOCIAL SECURITY, * 

 Defendant. * 

 MEMORANDUM OPINION 
 On May 25, 2023, Plaintiff Kimberly Soileau petitioned this Court to review the final 
decision of the Social Security Administration (SSA or Commissioner) denying her claim for 
benefits. ECF No. 1. This case was referred to a United States Magistrate Judge with the 
parties’ consent. 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). Pending before the Court is Ms. 
Soileau’s motion for summary judgment, which is fully briefed. ECF Nos. 9-10. No hearing is 
necessary. Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is 
supported by substantial evidence and if the SSA employed proper legal standards. 42 U.S.C. 
§§ 405(g), 1383(c)(3); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, 
for the reasons set forth below, Ms. Soileau’s motion is denied and the Commissioner’s decision 
is affirmed. 
I. Background 
 A. Procedural History 
 On June 28, 2018, Ms. Soileau filed an application for Disability Insurance Benefits 
under Title II of the Social Security Act, 42 U.S.C. §§ 301 et seq., claiming that she was unable 
to work due to post-traumatic stress disorder, bipolar disorder, social anxiety, depression, 
arthritis, “AC joint reconstruction” of the left shoulder, insomnia, nightmares, rapid emotional 
cycling, and panic attacks. ECF Nos. 8-4 at 3-4 and 8-6 at 2.1 She originally alleged an onset 
date of November 14, 2016, but later amended it to December 28, 2018. ECF No. 8-6 at 2, 32. 
 Ms. Soileau’s application was initially denied by the SSA on December 6, 2018, and 
again on reconsideration on April 12, 2019. ECF No. 8-5 at 2-5, 7-9. On July 23, 2019, Ms. 
Soileau filed a written request for a hearing before an Administrative Law Judge (ALJ), and 

following a hearing on February 19, 2020, the Honorable Clary Simmonds denied Soileau’s 
application for benefits on April 2, 2020. ECF Nos. 8-3 at 18-38 and 8-5 at 10-11, 92-97. On 
May 26, 2020, Ms. Soileau filed a Request for Review to the Appeals Council, which was denied 
on June 3, 2020. ECF Nos. 8-3 at 2-8 and 8-7 at 136-138. Ms. Soileau then filed an appeal in 
the United States District Court for the District of Maryland on July 23, 2020. Soileau v. 
Kijakazi, Civil Action No. DLB-20-2152 (D. Md.); ECF No. 8-13 at 2-5. Following the SSA 
Commissioner’s filing of a Consent Motion to Remand, the Honorable Deborah L. Boardman 
remanded the case by Order dated June 22, 2021. Soileau, Civil Action No. DLB-20-2152 (D. 
Md.), ECF Nos. 17 and 18. Upon remand, the Appeals Council directed the ALJ to, among other 

things, “give further consideration to the claimant’s maximum residual functional capacity” and, 
if warranted, obtain evidence from a vocational expert.2 ECF No. 8-12 at 12. 

 1 Record citations refer to the Court’s Case Management/Electronic Case Files system 
(ECF). ECF page numbers refer to the pagination printed at the top of the cited document. 

 2 The residual functional capacity assessment is a determination of a claimant’s 
“remaining capacity to do sustained work activities despite . . . physical or mental impairments.” 
Ladda v. Berryhill, 749 Fed. Appx. 166, 169 (4th Cir. 2018); see also 20 C.F.R. 
§ 404.1545(a)(1), (3)-(4). In evaluating a claimant’s physical residual functional capacity, the 
ALJ assesses the nature and extent of physical limitations by considering the ability to perform 
“certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, 
pushing, pulling, or other physical functions.” 20 C.F.R. § 404.1545(b). In evaluating a 
claimant’s mental residual functional capacity, the ALJ assesses the nature and extent of mental 
limitations with respect to activities such as “understanding, remembering, and carrying out 
instructions, and in responding appropriately to supervision, co-workers, and work pressures in a 
work setting.” 20 C.F.R. § 404.1545(c). 
 On July 20, 2022, the ALJ held a second administrative hearing and received testimony 
from Ms. Soileau and a vocational expert. ECF No. 8-12 at 35-71. On August 31, 2022, the 
ALJ determined that Ms. Soileau was not disabled within the meaning of the Social Security Act 
during the relevant timeframe. Id. at 12-27. On October 4, 2022, Ms. Soileau filed Written 
Exceptions to the Appeals Council, which were denied on March 24, 2023. Id. at 2-8. The 

ALJ’s August 31, 2022 decision therefore constitutes the final, reviewable decision of the SSA. 
Sims v. Apfel, 530 U.S. 103, 106-107 (2000); 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(a). Ms. 
Soileau subsequently initiated the present appeal. ECF No. 1. 
 B. Statutory Framework 
 The Social Security Act authorizes disability insurance benefit payments to every insured 
individual who “‘is under a disability.’” Cleveland v. Pol’y Mgmt. Sys. Corp., 526 U.S. 795, 801 
(1999) (quoting 42 U.S.C. § 423(a)(1)); see also Shue v. O’Malley, No. 23-1795, 2024 WL 
2827936, at *3 (4th Cir. June 4, 2024). The Act defines disability as the “inability to engage in 
any substantial gainful activity by reason of any medically determinable physical or mental 

impairment which can be expected to result in death or which has lasted or can be expected to 
last for a continuous period of not less than 12 months.” 42 U.S.C. § 423(d)(1)(A); see also 20 
C.F.R. §§ 404.1505(a), 416.905(a). Federal regulations require the ALJ to evaluate a claimant’s 
disability claim using a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920. 
Through this process, an ALJ evaluates, in order, whether the claimant: “(1) worked during the 
alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or 
equaled the requirements of a listed impairment; (4) could return to her past relevant work; and 
(5) if not, could perform any other work in the national economy.” Hancock v. Astrue, 667 F.3d 
470, 472 (4th Cir. 2012). 
 C. The ALJ’s Decision 
 Here, at step one, the ALJ determined that Ms. Soileau had not engaged in substantial 
gainful activity since November 14, 2016. ECF No. 8-12 at 15. At step two, the ALJ found that 
Ms. Soileau has severe impairments due to depression, anxiety, bipolar disorder, and post-
traumatic stress disorder, all of which significantly limit her ability to perform basic work 

activities. Id. The ALJ also determined that Ms. Soileau suffers from non-severe impairments in 
her back, abdomen, left knee, and left shoulder, as well as mild hearing loss and migraine 
headaches. Id. at 15-16. At step three, the ALJ determined that Ms. Soileau “does not have an 
impairment or combination of impairments that meets or medically equals the severity of one of 
the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.” Id. at 17-18. The ALJ 
found that that Ms. Soileau has moderate limitations due to her severe and non-severe 
impairments. Id. However, the ALJ concluded that Ms. Soileau “has the residual functional 
capacity to perform a full range of work at all exertional levels but with . . . nonexertional 
limitations.”3 Id. at 18-19. At step four, the ALJ determined that Ms. Soileau was not capable of 

performing past relevant work as a computer programmer (DOT 030.162-010), stock clerk (DOT 
299.367-014), teacher aid II (DOT 249.367-074), coffee shop counter attendant (DOT 311.477-
014), apparel stock clerk (DOT 299.667-014), or computer systems analyst (DOT 030.167-014).4 

 3 The ALJ identified the following nonexertional limitations: “the claimant can perform 
simple routine repetitive tasks that do not involve more than occasional simple decision making; 
can occasionally interact with co-workers, and occasionally work in tandem with others; can 
occasionally interact with the general public and frequently interact with supervisors; can 
perform work that does not require a high volume production rate pace or hourly quota such as 
assembly line work and can maintain concentration, persistence and pace in two hour increments 
and time off task can be accommodated with normal breaks and lunch; and she can tolerate 
occasional changes to a routine work setting.” ECF No. 8-12 at 18-19. 

 4 The “DOT” is the Dictionary of Occupational Titles. The Fourth Circuit has explained 
that “[t]he Dictionary of Occupational Titles, and its companion, Selected Characteristics of 
Id. at 26. At step five, the ALJ found that, considering her “age, education, work experience, and 
residual functional capacity,” Ms. Soileau could perform other jobs that exist in significant 
numbers in the national economy. Id. at 26-27. Therefore, the ALJ concluded that Ms. Soileau 
is not disabled as defined under the Social Security Act.5 Id. at 27. 
II. Standard of Review 

 The scope of judicial review of the SSA’s disability determination is “circumscribed.” 
Britt v. Saul, 860 Fed. Appx. 256, 259 (4th Cir. 2021). The Court must affirm the decision “so 
long as the agency applied correct legal standards and the factual findings are supported by 
substantial evidence.” Id.; accord Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015); Coffman 
v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Factual findings supported by substantial evidence 
“shall be conclusive.” 42 U.S.C. § 405(g); see also Hays v. Sullivan, 907 F.2d 1453, 1456 (4th 
Cir. 1990) (“[I]t is not within the province of a reviewing court to determine the weight of the 
evidence, nor is it the court’s function to substitute its judgment for that of the Secretary if [the] 
decision is supported by substantial evidence.”). 

 “The phrase ‘substantial evidence’ is a ‘term of art’ used throughout administrative law 
to describe how courts are to review agency factfinding.” Biestek v. Berryhill, 587 U.S. 97, 102 

Occupations Defined in the Revised Dictionary of Occupational Titles . . . , are [SSA] resources 
that list occupations existing in the economy and explain some of the physical and mental 
requirements of those occupations.” Pearson v. Colvin, 810 F.3d 204, 211 n.1 (4th Cir. 2015) 
(citing U.S. Dep’t of Labor, Dictionary of Occupational Titles (4th ed. 1991) and Selected 
Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles 
(1993)). 

 5 Pursuant to 20 C.F.R. § 404.967, Ms. Soileau requested an Appeals Council review by 
filing exceptions to the ALJ’s decision on October 4, 2022. ECF No. 8-14 at 72-79. By letter 
dated March 24, 2023, the Appeals Council denied Ms. Soileau’s request, finding that the ALJ’s 
decision was consistent with applicable rules, regulations, and Social Security Rulings. ECF No. 
8-12 at 2-3. As noted, see supra p. 3, the ALJ’s decision therefore constitutes the 
Commissioner’s final, reviewable decision. 
(2019). Under this standard of review, substantial evidence “means—and means only—such 
relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” Id. at 
103; see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966) (“Substantial evidence . . . is 
evidence which a reasoning mind would accept as sufficient to support a particular conclusion.”). 
It is “more than a mere scintilla . . . and somewhat less than a preponderance.” Laws, 368 F.2d at 

642. The “threshold for such evidentiary sufficiency is not high.” Biestek, 587 U.S. at 103. 
 In conducting the substantial evidence inquiry, this Court’s review is limited to whether 
the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in 
crediting the evidence. Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-440 (4th Cir. 
1997). Although an ALJ’s decision must be sufficiently detailed to allow for meaningful judicial 
review, see, e.g., Mascio, 780 F.3d at 636-637, an “elaborate or even sophisticated” explanation 
is not required, T-Mobile S., LLC v. City of Roswell, 574 U.S. 293, 302 (2015). Rather, an 
administrative decision’s reasoning need only be “reasonably discernible.” Garland v. Ming 
Dai, 593 U.S. 357, 369 (2021). “Meaningful review is frustrated—and remand necessary—only 

where [the court is] unable to fathom the [ALJ’s] rationale in relation to evidence in the record.” 
Britt, 860 Fed. Appx. at 262 (internal quotation marks and citation omitted). 
III. Discussion 
 On appeal, Ms. Soileau argues that the ALJ erred by failing to incorporate the need for a 
service dog in the residual functional capacity assessment and by improperly discounting her 
mental limitations based on the lack of objective evidence. ECF No. 9-1 at 7. Each argument is 
addressed in turn below. 
 A. Service Dog 
 Ms. Soileau first argues that the ALJ failed to incorporate her need for a service dog into 
the residual functional capacity assessment despite receiving evidence that Ms. Soileau has a 
medical need for such a dog.6 Id. at 9. Ms. Soileau contends that other courts have held that 
when a service dog is medically necessary, it must be considered in the claimant’s residual 

functional capacity assessment. Id. at 10. Ms. Soileau also notes that during the hearing, the 
vocational expert testified that an individual who requires a support or service animal to be 
present while working “would not be able to obtain, maintain, or sustain competitive full-time 
work utilizing any type of assistive device or animal.” Id.; see also ECF No. 8-12 at 68. 
 The Commissioner argues, on the other hand, that the ALJ considered the entire record, 
discussed Ms. Soileau’s dog at length, and concluded that there was no evidence that Ms. Soileau 
had a medical need for the assistance of a dog to work. ECF No. 10 at 6. The Commissioner 
further contends that precedential court and agency decisions preclude assessment of whether a 
disability insurance benefits claimant could perform work with a reasonable accommodation 

under the Americans with Disabilities Act of 1990, as amended (ADA). Id. at 7-8. 
 In rendering her decision, the ALJ engaged in the required five-step process and outlined 
the basis for each of her findings. As noted, see supra pp. 4-5, the ALJ found that Ms. Soileau 
has both severe and non-severe impairments that provide moderate limitations, but that she has 
the residual functional capacity to perform a full range of work at all exertional levels but with 
the identified nonexertional limitations. 

 6 See supra p. 2 n.2 for a discussion of what a “residual functional capacity assessment” 
determination entails. 
 With respect to Ms. Soileau’s dog, the ALJ concluded that Ms. Soileau’s dog “Tank is 
not a medically necessary ‘service’ animal.” ECF No. 8-12 at 22. The ALJ noted that Ms. 
Soileau had requested a service dog and a mental health provider had noted that “she would 
benefit” from a dog but concluded that those pieces of evidence were insufficient to support a 
finding that Tank is a service dog. Id. The ALJ cited the lack of evidence in the record 

regarding the medical need for a service dog and the absence of fundamental information, such 
as when Tank began providing services, what services he provides, and for what specific 
condition. Id. Instead, the ALJ noted that Ms. Soileau 
 testified that the dog helps her by requiring her to leave the house so she can get him 
 exercise and so she can buy food for him and the other dogs she has. She testified that he 
 gets between her and situations that make her feel unsafe and that he senses when she is 
 going to have a panic attack. These functions do not support that he allows her to 
 overcome functional limitations in order to work. 

Id. at 23. Thus, the ALJ did “not find any evidence that the claimant’s functional limitations 
require her to have assistance of a dog in order to work” and therefore rejected Ms. Soileau’s 
“request for an on the record decision based on the dog being a service animal.” 7 Id. 
 As the Commissioner correctly notes, Ms. Soileau did not establish that her dog Tank 
enables her to perform any work-related functions that she would otherwise be unable to do 
without the dog. See 20 C.F.R. § 404.1545(a) (stating that a residual functioning capacity 
assessment addresses impairments that “may cause physical and mental limitations that affect 
what you can do in a work setting”). Here, although Ms. Soileau’s psychologist stated that a 

 7 Ms. Soileau’s argument that the ALJ erroneously analyzed the service dog in the 
context of an impairment related work expense is unavailing. ECF No. 9-1 at 12. Nothing in the 
record reflects that the ALJ discussed the medical necessity of a service dog in connection with 
an impairment-related work expense, an analysis that is tied to assessment of a claimant’s ability 
to engaged in substantial gainful activity. See, e.g., 20 C.F.R. § 404.1574(b). Instead, the ALJ’s 
decision addressed Ms. Soileau’s dog Tank in connection with Ms. Soileau’s residual functional 
capacity assessment. 
service dog “would be beneficial as part of her treatment,” there is no evidence that Ms. Soileau 
was ever prescribed a service dog or that any doctor affirmatively found one to be necessary for 
her to work. ECF Nos. 8-11 at 235 and 8-12 at 22. To the contrary, the State agency physicians 
who reviewed Ms. Soileau’s record opined that she was able to understand and follow simple job 
instructions, make basic job-related decisions, perform work activities with few interpersonal 

demands, and adjust appropriately to workplace changes with advanced notice, and neither 
physician indicated that a dog would have any impact on her ability to perform these work-
related functions. ECF No. 8-4 at 12, 29. The ALJ found these opinions to be “persuasive” in 
conducting the residual functioning capacity assessment. ECF No. 8-12 at 24. 
 The cases upon which Ms. Soileau relies do not compel a different result. Ms. Soileau 
acknowledges that there is no binding precedent from the United States Court of Appeals for the 
Fourth Circuit that requires an ALJ to consider an individual’s service animal in a person’s 
residual functioning capacity assessment. ECF No. 9-1 at 9. She also acknowledges that “other 
district courts have determined that a service dog must be medically necessary to be considered 

in the individual’s [residual functional capacity assessment].” Id. at 9-10 (citing Santos v. 
Colvin, Civil Action No. 3:12-CV-05827-KLS, 2013 WL 5176846 (W.D. Wash. Sept. 12, 2013); 
Payano v. Colvin, Civil Action No. 2:15-CV-00294-RFB-GWF, 2017 WL 4778593 (D. Nev. 
Oct. 23, 2017)). Ms. Soileau argues that when there is evidence of prescription of the dog from a 
medical provider, the service animal must be considered in the individual’s residual functioning 
capacity assessment, yet she also concedes that a letter from a medical provider “is insufficient to 
establish that the service dog is medically necessary.” Id. at 10 (citing Payano, 2017 WL 
4778593 and Rentfro v. Colvin, Civil Action No. 14-CV-3015, 2015 WL 12868081 (C.D. Ill. Oct 
21, 2015)). These cases stand for the proposition that where there is insufficient evidence to 
establish that a service dog is medically necessary, consideration of the need for a service dog is 
properly excluded from the residual functioning capacity assessment. Even so, the ALJ in this 
case considered Ms. Soileau’s need for a service dog as part of the assessment and concluded 
that her functional limitations did not require her to have a service dog in order to work. ECF 
No. 8-12 at 23. 

 Recently, the Fourth Circuit observed that “the medical necessity test . . . appears to be in 
tension with the requirement that the [residual functioning capacity assessment] be based on all 
the relevant medical and other evidence found in the record.” Shue, 2024 WL 2827936, at *3 
(emphasis in original) (internal quotation marks and citation omitted). Without resolving 
whether the medical necessity test is the appropriate analytical tool, the Fourth Circuit affirmed 
the district court’s judgment after noting that the claimant “failed to present sufficient evidence -- 
medical or nonmedical -- of her need for the service dog in the workplace.” Id. at *3. The 
Fourth Circuit also found that the claimant had not challenged decisions of the United States 
Supreme Court and the SSA regarding the inapplicability of a reasonable accommodation 

analysis in disability determinations. Id. at *4. 
 In Cleveland v. Policy Management Systems Corporation, the Supreme Court explained 
that social security disability claims differ from claims under the ADA in part because the SSA 
“does not take the possibility of ‘reasonable accommodation’ into account” when making 
disability findings. 526 U.S. at 803 (emphasis in original); see also Fox v. Gen. Motors Corp., 
247 F.3d 169, 177 (4th Cir. 2001); Social Security Rulings (SSR) 00-1c, 2000 WL 5889, 65 Fed. 
Reg. 1215, 1218 (S.S.A. Jan. 7, 2000); SSR 11-2p, 2011 WL 4055665, at *9 (S.S.A. Sept. 12, 
2011). Accordingly, when an ALJ evaluates whether a claimant can do past relevant work as it 
is generally performed, or perform other work in the national economy, the ALJ does “not 
consider whether [the claimant] could do so with accommodations, even if an employer would 
be required to provide reasonable accommodations” under the ADA. SSR 11-2p, 2011 WL 
4055665, at *9. One narrow exception is where a claimant’s former employer “actually made 
the accommodation” in a past job, and the issue being addressed is whether the claimant can 
perform that past work as it was “actually performed.” SSR 11-2p, 2011 WL 4055665, at *9. 

Here, however, Ms. Soileau did not use a service dog during any of her past relevant work, and, 
in any event, the ALJ did not find that Ms. Soileau could perform prior work as she actually 
performed it. ECF No. 8-3 at 31-32. 
 In sum, the ALJ’s factual findings are supported by substantial evidence. That is, there is 
sufficient “relevant evidence as a reasonable mind might accept as adequate to support” her 
conclusion. Biestek, 587 U.S. at 103. Accordingly, those factual findings are conclusive. 42 
U.S.C. § 405(g). This, together with the fact that the ALJ assessed the relevant evidence, 
engaged in the proper analysis, and articulated the rationale for her decision, means the Court 
must affirm the Commissioner’s decision. Sterling Smokeless Coal Co., 131 F.3d at 439-440. 

 B. Mental Limitations 
 Ms. Soileau also argues that the ALJ improperly discounted her mental limitations based 
on the absence of objective evidence. ECF No. 9-1 at 7, 15-17. When making disability 
determinations, an ALJ must consider the claimant’s symptoms and the extent to which such 
symptoms “can reasonably be accepted as consistent with the objective medical evidence and 
other evidence.” 20 C.F.R. § 404.1529(a). While the ALJ will consider the claimant’s 
statements about symptoms, such statements “will not alone establish that [the claimant is] 
disabled.” Id. For a claimant to succeed, there must first be objective medical evidence showing 
the existence of a medical impairment that could reasonably be expected to produce the pain or 
other symptoms alleged. Craig, 76 F.3d at 591-595 (emphasis added). Objective evidence of 
the pain or other alleged symptom itself is not required, as a subjective phenomenon often will 
not be objectively verifiable. Id. at 594. 
 If this first step is satisfied, the ALJ will then evaluate the intensity and persistence of the 
claimant’s symptoms and the extent to which they affect the claimant’s ability to work. Id. at 

595 (citing 20 C.F.R. § 404.1529(c)). The ALJ does so by considering “all of the available 
evidence” including medical and nonmedical sources, medically acceptable clinical and 
laboratory diagnostic techniques, information about the claimant’s prior work record, as well as 
the claimant’s statements, which are evaluated “in relation to the objective medical evidence and 
other evidence,” considering “whether there are any inconsistencies . . . and the extent to which 
there are any conflicts.” 20 C.F.R. § 404.1529(c). “Although a claimant’s allegations about her 
pain may not be discredited solely because they are not substantiated by objective evidence of 
the pain itself or its severity, they need not be accepted to the extent they are inconsistent with 
the available evidence.” Craig, 76 F.3d at 595. 

 Ms. Soileau argues that the ALJ erred by failing to consider all medical evidence, relying 
instead on the absence of objective evidence in reaching its decision. ECF No. 9 at 7. Ms. 
Soileau specifically points to Lewis v. Berryhill, a case in which the Fourth Circuit cautioned that 
an “ALJ has the obligation to consider all relevant medical evidence and cannot simply 
cherrypick facts that support a finding of nondisability while ignoring evidence that points to a 
disability finding.” 858 F.3d 858, 869 (4th Cir. 2017) (internal quotation marks and citation 
omitted). Ms. Soileau also relies on Shelley C. v. Comm’r of Soc. Sec. Admin., where the Fourth 
Circuit extended a prior holding that ALJs cannot “rely upon the absence of objective medical 
evidence to discredit a claimant’s subjective complaints regarding symptoms of . . . [a] disease 
that does not produce such evidence” to depression and chronic depression. 61 F.4th 341, 361 
(4th Cir. 2023) (emphasis omitted) (internal quotation marks and citation omitted). Because no 
laboratory test has yielded results of sufficient sensitivity and specificity to be used as a 
diagnostic tool for major depressive disorder, and because symptoms caused by major depression 
can vary from person to person, the Court concluded that symptoms of major depressive disorder 

are “entirely subjective, determined on a case-by-case basis.” Id. (emphasis omitted) (internal 
quotation marks and citation omitted). Accordingly, in such cases, “subjective statements from 
claimants should be treated as evidence substantiating the claimant’s impairment.” Id. at 362 
(internal quotation marks and citation omitted). 
 In support of her argument, Ms. Soileau points to the following excerpts from the ALJ’s 
decision: 
 At the hearing, [Ms. Soileau] testified that oftentimes she was so depressed she 
 could not do anything (Hearing Testimony). This is not supported by the 
 objective medical evidence, however. She told her treatment providers that she 
 was travelling to Louisiana and helping out family members (Ex. 18F, 20F). She 
 is considering obtaining a pilot’s license. Treatment notes show generally stable 
 mental status findings consistent with the above residual functional capacity (Ex. 
 14F). 
 * * * 
 Based on the foregoing, I find the claimant has the above residual functional 
 capacity assessment, which is supported by the objective medical evidence and 
 the opinions of record. 

ECF No. 8-12 at 23, 26. 
 Contrary to Ms. Soileau’s contentions, the ALJ did not discount her mental limitations 
based on the absence of objective evidence. Rather, as the Commissioner correctly notes, the 
ALJ found that Ms. Soileau’s own subjective reports of improvement with treatment and 
independent daily activities were inconsistent with the disabling limitations she alleged. Indeed, 
the ALJ supported the two statements at issue with a discussion of Ms. Soileau’s own reports and 
explained that the residual functioning capacity was “supported by the objective medical 
evidence,” not that Ms. Soileau’s statements were being discounted because the objective 
evidence did not validate them. Id. As this Court has held, an ALJ may weigh a claimant’s 
subjective complaints against the rest of the record. E.g., Krista M. v. Kijakazi, Civil Action No. 
MJM-21-2474, 2023 WL 2500306, at *8 (D. Md. Mar. 14, 2023) (finding the ALJ properly 

discounted opinions that were based largely on plaintiff’s complaints and were inconsistent with 
much of the record); Lasharne W. v. Comm’r, Civil Action No. SAG-21-2603, 2023 WL 
2414497, at *4 (D. Md. Mar. 8, 2023) (noting that weighing a claimant’s subjective complaints 
against prior statements and medical records “remains permissible under Shelley C.”). 
 Here, it does not appear that the ALJ cherry-picked facts to support a finding of 
nondisability. The ALJ appropriately considered Ms. Soileau’s symptoms in relation to the rest 
of the evidence. See Craig, 76 F.3d at 595 (stating that a claimant’s allegations “need not be 
accepted to the extent they are inconsistent with the available evidence”). As the Commissioner 
notes, the ALJ acknowledged Ms. Soileau’s reports that she had difficulty sleeping and 

concentrating, experienced panic attacks, and had external stressors that sometimes worsened her 
symptoms (ECF No. 8-12 at 20-22), while also recognizing that Ms. Soileau reported meaningful 
improvement with therapy and medication (ECF Nos. 8-11 at 248-249, 261; 8-12 at 23; and 8-16 
at 99, 101-102). In sum, the ALJ properly “balance[ed] the record evidence” by making 
reasonable factual findings that did not “dismiss” Ms. Soileau’s subjective complaints “based 
entirely upon the belief that they were not corroborated by the record’s medical evidence.” 
Shelley C., 61 F.4th at 360 (emphasis omitted). 
 Lastly, to the extent Ms. Soileau disagrees with the ALJ’s consideration of the evidence, 
her argument amounts to a request for this Court to reweigh evidence, something that is not 
permissible. E.g., Fiske v. Astrue, 476 Fed. Appx. 526, 527 (4th Cir. 2012). Because the ALJ’s 
decision complies with the governing legal standards and is supported by substantial evidence, 
this Court must affirm. 
IV. Conclusion 
 For the reasons set forth herein, Soileau’s Motion for Summary Judgment is denied and 

the Commissioner’s decision is affirmed. A separate Order follows. 

Date: July 9, 2024 /s/ 
 Erin Aslan 
 United States Magistrate Judge