**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LILLIAN L. BARKES,
Plaintiff-Appellant,

v.

No. 97-1216

KENNETH S. APFEL, COMMISSIONER OF
SOCIAL SECURITY,
Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., Chief District Judge.
(CA-95-165-5)

Argued: March 5, 1998

Decided: June 9, 1998

Before LUTTIG and WILLIAMS, Circuit Judges, and
CLARKE, Senior United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Karl E. Osterhout, ROBERT PEIRCE & ASSOCIATES,
Pittsburgh, Pennsylvania, for Appellant. Victor J. Pane, Assistant
Regional Counsel, Office of the General Counsel, SOCIAL SECUR-
ITY ADMINISTRATION, Philadelphia, Pennsylvania, for Appellee.
**ON BRIEF:** James A. Winn, Chief Counsel, Region III, Office of the

General Counsel, SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania; William D. Wilmoth, United States Attorney, Helen Campbell Altmeyer, Assistant United States Attorney, Northern District of West Virginia, Wheeling, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Lillian Barkes appeals from a judgment of the district court upholding the determination of the Commissioner of Social Security that she is ineligible for disability insurance benefits ("DIB") under the Social Security Act. For the reasons that follow, we affirm the district court.

I

Barkes was 49 years old on February 23, 1990, the date she alleges that she became disabled. She has a ninth-grade education and obtained her high school Graduate Equivalency Diploma. J.A. at 31.

Barkes worked as an aide at a center for the mentally retarded from August 1986 until February 23, 1990. J.A. at 32-33, 75. Her job classification was "very heavy"[1] since it entailed frequent, heavy lifting of over 100 pounds, and frequent lifting of over 50 pounds. J.A. at 76. She attributes her alleged disability to a 1988 accident at work which damaged the nerves and muscles in her neck, back, and left arm. J.A. at 40-41, 59.

_____

[1] The Commissioner's regulations define "very heavy" work as involving lifting of more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. 20 C.F.R.§ 404.1567(d) (1997).

2

Barkes filed for DIB on June 19, 1990, alleging disability as of February 23, 1990. J.A. at 54-55. The Commissioner maintains that she last met the disability insured status requirements for purposes of entitlement to benefits of the Act on December 31, 1990, although Barkes erroneously argues that she last met that status on December 31, 1995.[2]

A.

An administrative hearing was held on July 9, 1991. At the hearing, Barkes testified that she quit working because of headaches and pain in her neck, back, and left arm. J.A. at 33. She claimed that she took Extra Strength Tylenol, Tylenol P.M., and Sominex for the pain and to help her sleep. J.A. at 34. Concerning her activity, Barkes testified that she did some cooking daily, and shopping bi-weekly. J.A. at 148. In addition, she cleaned her mobile home once a week with her daughter's help, washed dishes once a day, and did laundry once a week. J.A. at 148.

The following medical evidence was also presented at the administrative hearing: physicians' evaluations from Jack S. Koay, M.D., an orthopedic surgeon and Workers' Compensation Fund physician who evaluated Barkes for her Workers' Compensation claim; C.L. Marquart, M.D., a neurosurgeon and a treating physician of Barkes'; and Bradley K. Miller, D.O., an internist and another of Barkes' treating physicians.

Dr. Koay evaluated Barkes on February 1, 1989 and recommended that no percentage of impairment rating should be granted to her. J.A.

_____

[2] Barkes' belief can be attributed to the Administrative Law Judge's ("ALJ") finding that she continued to meet the disability insured status through December 1995. J.A. at 183. However, the ALJ issued his findings on February 7, 1995, and thus could not have found that Barkes met requirements through December 1995, a date 10 months in the future. Moreover, the Appeals Council and the Magistrate Judge also stated that December 31, 1990 was the relevant date. Despite this discrepancy, there is substantial evidence in the record for the Commissioner to conclude that Barkes was not disabled through December 1995; thus, the discrepancy is irrelevant.

3

at 119. In August 1990, Dr. Koay found that Barkes was not temporarily totally disabled. J.A. at 126.

Dr. Miller examined Barkes in May, June, and October 1990, and noted that she complained of chronic pain in her neck, left shoulder, and left arm. J.A. 141, 269-72. Dr. Miller did not identify any functional limitations for Barkes as a result of her alleged pain, and indicated that her prognosis was fair. J.A. at 141.

Dr. Marquart reported on June 27, 1990, that he found no physical evidence to explain the pain Barkes complained of, and that she was "extremely sensitive," and that it "was difficult to assess her strength as I felt that she was giving less than a full capable effort." J.A. at 111. While Barkes presented possible carpal tunnel syndrome, Dr. Marquart found no evidence of any cervical radiculopathy, which is pain in the neck, shoulder, and arm caused by pressure on the roots of the spinal nerves originating in the neck region. Id.; see Attorney's Dictionary of Medicine C-140 (31st ed. 1998). On October 9, 1990, Dr. Marquart found no surgical problems with the Magnetic Resonance Imaging ("MRI") that he requested for Barkes J.A. at 131. In response to interrogatories concerning Barkes' Workers' Compensation Claim, Dr. Marquart indicated that Barkes was temporarily totally disabled from the period beginning February 23, 1990 through December 28, 1990. J.A. at 143.

The Commissioner denied Barkes' applications at all levels of administrative review and found on November 12, 1991 that she was capable of performing a full range of light work. J.A. at 17-18.

Barkes filed a civil action in district court seeking judicial review of the Commissioner's final decision. J.A. at 234. The court remanded her case for further administrative action, finding that the ALJ had erred by applying an inapplicable Social Security Ruling to her case. J.A. at 234-49.

B.

A new administrative hearing was held on July 27, 1994, at which Barkes and the following experts testified: Michael Ginsburg, M.D.,

4

a medical expert, and Charles Cohen, Ph.D., a vocational expert. Additional evidence covering Barkes' medical history since the first administrative hearing was also presented.

At this administrative hearing, Barkes testified that she was in constant pain, J.A. at 207, and took aspirin and Tylenol to treat it. J.A. at 205. Barkes alleged that the pain made it difficult for her to sleep and restricted her ability to lift and carry things. J.A. at 209-210.

Michael Ginsberg, M.D., a medical expert, gave opinion testimony and opined that Barkes did not have a medical condition either meeting or equaling any of the specifically listed impairments in Appendix 1 to 20 C.F.R.[3] J.A. at 214. He testified that there were no neurological findings confirming that Barkes had a neurologic injury or impairment. Id. While he agreed that Barkes had carpal tunnel syndrome, he concluded that it would affect only some fine movement of her hands. J.A. at 218. He also identified the C-5, C-6 level bulge in her neck with cord impingement on the left, J.A. at 214, as radiologic evidence that would explain pain in Barkes' left arm. At most, this condition would affect her ability to do manual related activities with that arm. J.A. at 221. He concluded that Barkes was restricted only from performing fine movement involving motor coordination such as turning a screw or picking up a small object by feel rather than vision. J.A. at 222.

Charles M. Cohen, Ph.D., gave expert opinion testimony on vocational issues. The ALJ asked Dr. Cohen to consider a hypothetical individual with the following restrictions on her ability to work: first, the inability to perform work above the light level, [4] and second, the

_____

[3] To be considered disabled under the Commissioner's regulations, a claimant must have an impairment that is listed in 20 C.F.R. part 404, Appendix 1, in which case the claimant is disabled, or their impairment must prevent them from performing their previous work and also prevent them from engaging in any other work.

[4] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b) (1997).

5

inability to perform work requiring fine manipulation with her hands. Dr. Cohen testified that given Barkes' age and educational and vocational history, the hypothetical individual could perform several jobs existing in significant numbers in the local and national economy. J.A. at 224. These included the job classifications of light cleaning and light packing. Id. The jobs that he suggested required either moderate or gross movement of the arms and hands, but not fine manipulation. J.A. at 225.

Medical reports showed that Dr. Marquart performed carpal tunnel release surgery on Barkes on February 2, 1994 for her left wrist, and March 16, 1994, for her right wrist. J.A. at 307, 310, 313. Dr. Marquart found that as of September 19, 1994, Barkes exhibited no significant neurological problems. J.A. at 187.

Barkes submitted the report of a consultative physician, Thomas J. Schmitt, M.D., who evaluated her for arthritis on March 30, 1994, at her attorney's request. J.A. at 287. Dr. Schmitt concluded that Barkes possessed a full range of motion in all joints, with the exception of her right and left shoulders, and that her grip strength was diminished. Id. He also noted that "[t]here is abnormality of fine manipulations and simple grasping movements in both hands." Id.

The ALJ issued a new decision on February 7, 1995, again denying benefits to Barkes and finding her capable of performing a wide range of light work. J.A. at 172-84. Barkes requested a review of this decision by the Appeals Council, and on September 27, 1995, it denied that request. J.A. at 15-16.

Barkes, once again appealed her denial of benefits to district court. On July 11, 1996, Magistrate Judge John W. Fisher, III, issued a Report and Recommendation ("R & R") recommending that the Commissioner's decision be affirmed and that the Commissioner's Motion for Summary Judgment be granted. Appellant's Appendix at 4-5. Barkes appealed and on December 27, 1996, the district court adopted the Magistrate's R & R in whole and entered judgment in favor of the Commissioner.

6

II

A.

Under the Social Security Act, we must uphold the factual findings of the Commissioner if they are supported by substantial evidence and were reached through application of the correct legal standard. 42 U.S.C.A. §§ 405(g), 1383(c)(3) (West Supp. 1997); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987); Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the Commissioner's designate, the ALJ). Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). Accordingly, the issue before us is not whether Barkes is disabled, but whether the ALJ's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Coffman, 829 F.2d at 517.

B.

Barkes challenges whether substantial evidence supports the ALJ's conclusion that she retains the residual functional capacity to engage in substantial gainful activity and is not disabled within the meaning of the Social Security Act. Barkes claims that, in determining she could do light work, with nonexertional limitations on performing fine movements and motor coordination of her hands, the ALJ disregarded her testimony concerning pain and the testimony of a medical expert. To support her claim of disability, Barkes cites the severe pain she experiences in her neck, back, and left arm which allegedly prevents her from working. Barkes also relies upon Dr. Ginsberg's testi-

7

mony that the C-5, C-6 level bulge in her neck impinging on her spinal cord is medical evidence that would explain the alleged pain in her upper left arm. Barkes argues that Dr. Ginsberg's testimony proves that she had a medical condition which could be "reasonably expected to cause the pain alleged." 20 C.F.R.§§ 416.929(a) & 404.1529(a) (1997).

Social Security Administration regulations promulgated in 1991 provide the authoritative standard for the evaluation of pain in disability determinations, see Pope v. Shalala, 998 F.2d 473, 485-486 (7th Cir. 1993), and control all determinations made since their effective date. Craig v. Chater, 76 F.3d 585, 593 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918, 925 (4th Cir. 1994). These regulations set up a two-step process for making the determination of whether a claimant is disabled by pain. Under the first step, sections 416.929 and 404.1529 emphasize the importance of objective evidence in the evaluation of pain:

> In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence, and other evidence . . . . However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which establish that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. §§ 416.929(a) & 404.1529(a) (1997).

In the second step of the disability determination, the regulations focus on evaluating the quality of the pain alleged:

> We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will

8

evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your medical history, the medical signs and laboratory findings, and statements by your treating or examining physician or psychologist or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

20 C.F.R. § 416.929(c)(4) & 404.1529(c)(4) (1997).

Under these regulations, Barkes must first show objective medical evidence of "the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 416.929(b) & 404.1529(b) (1997). In other words, she must show a medically determinable impairment which could reasonably be expected to cause not just pain, or some pain, or pain of some kind or severity, but the pain the claimant alleges she suffers. Craig, 76 F.3d at 594. At this threshold level of inquiry, the "intensity, persistence, or functionally limiting effects" of the claimant's asserted pain are not directly at issue. See 20 C.F.R. §§ 416.929(b) & 404.1529(b). The focus at this point is instead on establishing a determinative underlying impairment-- a statutory requirement for entitlement to benefits, see 42 U.S.C.A. § 1382c(a)(3)(A) -- which could reasonably be expected to be the cause of the disabling pain asserted by the claimant. Craig, 76 F.3d at 594.

To support her claims of disabling pain, Barkes points to her testimony concerning pain and the testimony of Dr. Ginsberg, the medical expert who testified that the "C-5, C-6 bulge, reported impingement," J.A. at 221, was radiologic evidence that would explain Barkes' pain in her left arm. Barkes argues that this evidence of a medical condi-

9

tion which could reasonably be expected to cause her pain, required the ALJ to determine, as a matter of law and fact, that Barkes was entitled to DIB. To the contrary, the analysis of pain for a disability determination does not end when a claimant has met her threshold obligation of showing a medical impairment reasonably likely to cause the pain claimed. The intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must also be evaluated. See 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1) (1997). Consequently, the ALJ continued his analysis of Barkes' claim and proceeded to evaluate the quality of her pain.

Under the second step in the analysis of Barkes' disability claim, the Commissioner must take into account not only her statements about her pain, but also "all the available evidence," including: testimony of all the medical experts, her medical history, medical signs, and laboratory findings, see id.; any objective medial evidence of pain (such as evidence of reduced joint motion, muscle spasm, deteriorating tissues, sensory deficit, or motor disruption), see 20 C.F.R. §§ 416.929(c)(2) & 404.1529(c)(2) (1997); and any other evidence relevant to the severity of the impairment, such as evidence of her daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it, see 20 C.F.R. §§ 416.929(c)(3) & 404.1529(c)(3) (1997).

The medical evidence in the record did not support a conclusion that Barkes' pain was totally disabling. Barkes' treating physician, Dr. Marquart, found no neurological evidence that would explain her complaints of pain. On the other hand, Dr. Ginsberg, the testifying medical expert, opined that Barkes presented radiologic evidence accounting for her pain. This Circuit follows the attending physicians rule which requires that the opinion of a claimant's treating physician be given great weight and may be disregarded only if there is persuasive contradictory evidence. Coffman, 829 F.2d at 517 (quoting Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986)). The ALJ correctly credited the opinion of Dr. Marquart and found that Barkes' pain did not incapacitate her since there was no persuasive contradictory evidence to support a finding of disability.

There was substantial evidence in the record to support the ALJ's conclusion that Barkes could engage in substantial gainful activity

10

and was not disabled within the meaning of the Social Security Act. Besides the medical testimony which indicated that Barkes could perform light work with limitations on performance of fine movements and motor coordination of her hands, the vocational expert testified that there were a significant number of jobs in the national and local economy that an individual with Barkes' work-related limitations could perform. Therefore, there was substantial evidence in the record for the ALJ to conclude that Barkes was not disabled under the Social Security Act before either December 31, 1990, the last date she met the disability insured status, or December 31, 1995, the date Barkes relies upon.

III

Based on the foregoing reasons, we conclude that the Commissioner's decision is supported by substantial evidence in the record. Accordingly, the district court's judgment is hereby

AFFIRMED.