**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

FAYE H. HYATT,
Plaintiff-Appellant,

v.

No. 97-2225

KENNETH S. APFEL, COMMISSIONER OF
SOCIAL SECURITY,
Defendant-Appellee.

Appeal from the United States District Court
for the District of South Carolina, at Orangeburg.
Ervin S. Swearingen, Magistrate Judge.
(CA-96-2890-17JI-5)

Submitted: June 30, 1998

Decided: August 6, 1998

Before WIDENER and NIEMEYER, Circuit Judges, and HALL,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Margaret Miles Bluestein, SUGGS & KELLY, LAWYERS, P.A.,
Columbia, South Carolina, for Appellant. Frank W. Hunger, Assistant
Attorney General, J. Rene Josey, United States Attorney, John Berk-
ley Grimball, Assistant United States Attorney, Mary Ann Sloan,
Chief Counsel, Region IV, Elyse S. Sharfman, Acting Deputy Chief
Counsel, Rollin D. Mathis, Assistant Regional Counsel, Office of the

General Counsel, SOCIAL SECURITY ADMINISTRATION,
Atlanta, Georgia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Faye H. Hyatt appeals the order of the magistrate judge* upholding
the decision by the Commissioner of Social Security (Commissioner)
finding that Hyatt is not entitled to social security disability benefits.
Because substantial evidence supports the Commissioner's decision,
we affirm.

I

Hyatt was born on December 13, 1949. She completed require-
ments for a GED and vocational training as a cosmetologist. Hyatt has
worked as a department store clerk, a hairdresser, a cosmetology
instructor, and a substitute school teacher. She alleged disability due
to complications from ruptured silicone breast implants following
mastectomy. The complications Hyatt identified were loss of use of
her arms, immune system problems, allergies, breathing problems,
and pain in her arms and shoulders. Additionally, Hyatt suffered from
depression and colitis. Her alleged onset date of disability was Sep-
tember 1, 1992.

Hyatt's application was denied initially and on reconsideration. She
received a hearing before an Administrative Law Judge (ALJ). Hyatt,
who was represented by counsel at the hearing, testified, as did a
vocational expert (VE), J. Adger Brown, Jr. Following the hearing,
the ALJ issued a decision finding that, while Hyatt could no longer

_____

*The parties consented to the jurisdiction of the magistrate judge.

perform her past relevant work, she retained the residual functional capacity to perform certain sedentary jobs that existed in significant numbers in the national economy. The ALJ therefore found that Hyatt was not entitled to a period of disability or disability insurance benefits.

The Appeals Council affirmed the decision, which became the final decision of the Commissioner. Hyatt then filed the subject action. Because he found that substantial evidence supported the Commissioner's decision, the magistrate judge, acting pursuant to 28 U.S.C.A. § 636(c)(1) (West 1993 and Supp. 1998), entered judgment for the Commissioner.

Hyatt appeals that decision. We review the Commissioner's disability decision to determine whether it is supported by substantial evidence and whether the correct law was applied. See 42 U.S.C.A. § 405(g) (West Supp. 1998); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "`such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence "`consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.'" Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1996)).

II

In 1982 Hyatt underwent bilateral subcutaneous mastectomy for fibrocystic disease. She had breast reconstruction with silicone gel implants. Subsequently, she experienced capsular contraction, deformity, and possible rupture. The gel implants were removed and replaced with saline implants on September 10, 1992. After she developed cellulitis and swelling of the right breast, Hyatt elected to have both implants removed on September 5, 1993. Postoperatively she did well and was treated with antibiotics.

In June 1994, Hyatt complained of tenderness along the right chest wall, right axillary discomfort, and intermittent right arm pain and

3

numbness. Neurological tests results were unremarkable. There was no evidence of nerve root or spinal cord damage, neuropathy, radiculopathy, or myelopathy. The diagnosis was bursitis in the right shoulder. She also was diagnosed with irritable bowel syndrome. Hyatt had mitral valve prolapse, which occasionally caused rapid heartbeats and chest pain.

Hyatt was examined in August 1994 in connection with her involvement in a class action lawsuit for breast implant injury. Her neurological and musculoskeletal exams were normal. She had elevated white blood cell count, elevated thyroid antibodies, and elevated cholesterol. The examining physician concluded that Hyatt had atypical connective tissue disease, was thirty-five percent disabled, and could not perform many of the duties of her job.

Between November 8, 1994, and May 17, 1995, Hyatt was seen several times for complaints of numbness in the right arm and hand and pain in her neck, shoulder, arms, breast, and back. An injection eased her shoulder pain. X-ray and other tests, including an MRI, were all normal. Hyatt had a good range of motion in her cervical spine.

At the hearing, Hyatt testified that she cooked, cleaned her house, did laundry, and drove. She said that she stopped working because she could not do things such as vacuuming and blow-drying hair, which required a lot of arm motion. While Hyatt had other physical complaints, such as a spastic colon, allergies, occasional back pain, and depression, her arm problems were her main complaint. She testified that she was unable to pick up heavy objects or to stand or sit for more than thirty minutes at a time.

The VE concluded that a person with Hyatt's limitations could perform work as a surveillance monitor, a cost and weight clerk, an accounting and auditing clerk, and a telephone quotation clerk. Additionally, such a person could function in an administrative support capacity. The VE testified about how many of these jobs existed in the South Carolina economy.

The ALJ found that Hyatt's subjective allegations of pain and other symptoms such as fatigue were not credible to the extent that they

4

would interfere with her ability to perform certain unskilled sedentary work. He based this determination on her daily activities, her essentially normal medical tests, and the fact that the medications she took were effective, with no medically documented side effects.

III

Hyatt first takes issue with the hypotheticals posed to the VE. She contends that SSR 83-12 directs that a person who is capable of only unskilled, sedentary work with a sit/stand option is per se disabled. She is correct that the ruling states that the sit/stand option ordinarily is unavailable in unskilled jobs. This statement is hardly a directive that unskilled workers who need a sit/stand option are per se disabled. Rather, the ruling recognizes that the option may be available in some unskilled jobs and states that "a VS [VE] should be consulted." SSR 83-12. Here, the ALJ consulted a VE, who identified some unskilled sedentary jobs where the worker could alternate between sitting and standing.

Hyatt also contends that SSR 83-10 directs that she cannot perform the jobs which the VE identified. SSR 83-10 clarifies the manner in which the medical-vocational guidelines (grids) at 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1997), address the issue of capability to do other work. The ruling also defines terms and concepts frequently used in evaluating disability under the grids. We note first that, because Hyatt suffers from nonexertional impairments, the ALJ only used the grids as a reference, and that it was necessary to consult the VE. Thus, the grids were not decisive in Hyatt's case.

SSR 83-10 contains elaborations of the activities necessary to carry out the requirements of sedentary, light, and medium work. The elaborations "may be used by decisionmakers to determine if an individual has the ability to perform the full range of sedentary . . . work from an exertional standpoint." SSR 83-10. The description of sedentary work states that "[m]ost sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions." This language simply does not support Hyatt's position that the ruling directs a finding that she cannot perform the jobs the VE enumerated. For instance, decisionmakers "may," but are not obligated to, use the elaborations.

5

And "most," but not necessarily all, sedentary jobs require good manual dexterity.

Nor did the ALJ misstate Hyatt's limitations by not asking the VE to assume that she lacked manual dexterity but instead stating that her range of motion in her arms was limited. There was no objective medical evidence that Hyatt lacked manual dexterity. Although Hyatt complained on occasion of some numbness in her fingers, she had good or normal grip strength and no objective neurological impairments.

Finally, Hyatt argues that she should be found disabled because the jobs cited by the VE do not represent a significant number of jobs and therefore do not establish that she can perform other work. The VE testified that 650 jobs that Hyatt could perform existed in South Carolina. We previously have found that as few as 110 jobs constitute a significant number. See Hicks v. Califano, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979). In light of our holding in Hicks, Hyatt's argument lacks merit.

IV

We therefore find that substantial evidence supports the Commissioner's decision. We dispense with oral argument because the facts and legal contentions are fully presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6