Re:  Juanita WATERS

v.

**Michael J. ASTRUE, Commissioner of Social Security.**

**No.  PWG–06–101.**

United States District Court,
D. Maryland.

July 18, 2007.

Stephen F. Shea, Esq., Elkind & Shea, Silver Spring, MD, for Plaintiff.

Allen F. Loucks, AUSA, Baltimore, MD, for Defendant.

GRIMM, United States Magistrate Judge.

Dear Counsel:

Pending before this Court, by the parties' consent, are Cross–Motions for Summary Judgment concerning the Commissioner's decision denying Ms. Waters' claims for Disability Insurance Benefits ("DIB")and Supplemental Security Income ("SSI"). (Paper Nos. 4, 12, 17). The Commissioner filed a Motion to Consolidate this case with another case, *Maxine Barton v. Astrue, PWG–06–790,* and a Motion for *En Banc* Consideration of both cases. (Paper Nos. 18 & 19). Plaintiff's counsel filed Responses in Opposition to the Defendant's Motions. (Paper Nos. 23 & 24).

■ Counsel for Plaintiff in *Maxine Barton v. Astrue,* Anthony R. Mignini, also objected to the Defendant's request that this case be consolidated and considered *en banc.* (PWG–06–790, Paper Nos. 33, 34). I do not find that consolidation and/or *en banc* consideration is necessary or appropriate. The two cases are different factually and procedurally, and counsel have raised different allegations of error in

their respective cases. Therefore, the Commissioner's Motion for Consideration *En Banc* (Paper No. 18) and the Motion to Consolidate (Paper No. 19) are both DENIED.

This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir.1996); *Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir.1987). A hearing is unnecessary. Local Rule 105.6. For the reasons that follow, this Court DENIES the Commissioner's Motion and GRANTS the Plaintiff's Alternative Motion for remand.

Juanita Waters ("Claimant") applied for DIB and SSI on July 9, 2002, alleging that she was disabled as of June 17, 2002, due to bilateral shoulder arthritis, fibromyalgia, vitiligo, insomnia, headaches, and depression. (Tr. 119, 125, 157). Her claims were denied initially, (Disability Redesign Prototype Case) and she timely requested an administrative hearing. (Tr. 78–80, 157). After a hearing on July 16, 2004, before an Administrative Law Judge, the Honorable Guy B. Arthur ("ALJ"), the ALJ issued a decision on November 26, 2004, denying Ms. Waters' applications for benefits. (Tr. 28–38). The ALJ found that Ms. Waters had not engaged in substantial gainful activity since her alleged onset date and had the following medically determinable impairments at step two of the sequential evaluation: osteoarthritis and allied disorders[1]. The ALJ determined at step three that none of her impairments met, or medically equalled, any of the impairments listed ("Listings") in the Regulations at the third step of the

---

1. The ALJ also found that Ms. Waters' hypertension, insomnia, vitiligo, migraine headaches and pain associated with fibromyalgia were not severe—i.e., they did not significantly limit her ability to perform basic work related activities as defined in the Regulations. (Tr. 30).

sequential evaluation. The ALJ next determined that Ms. Waters retained the residual functional capacity ("RFC") to perform less than a full range of "light work [2]". Based on her RFC, and the testimony of the vocational expert ("VE"), the ALJ found Claimant could perform her past relevant work as a "sanitation agent." While the disability analysis could have ended there, the ALJ continued the analysis and found alternatively, based on the testimony of the VE, there was other work available in both the local and national economies existing in substantial numbers which the Claimant could perform. (Tr. 38). Accordingly, the ALJ found she was not disabled.

After the ALJ issued his decision, acting *pro se*, Ms. Waters submitted additional evidence to the Appeals Council. The Appeals Council accepted this evidence and incorporated it into the record. *See* Exhs. AC 1–AC 4 (Tr. 220–528). On November 10, 2005, the Appeals Council notified the Claimant that her request for review was denied, making her case ready for judicial review. (Tr. 11–14).

Claimant presents several arguments in support of her contention that the ALJ's decision is not supported by substantial evidence. First, citing this Court's decision in *Hawker v. Barnhart*, 235 F.Supp.2d 445 (D.Md.2002) she argues that the Appeals Council's failure to explain its reasoning of how it weighed and evaluated the new evidence warrants a remand. The Commissioner contends that the decision in *Hawker* is at odds with Fourth Circuit precedent, *Wilkins v. Secretary*, 953 F.2d 93 (4th Cir.1991). The Commissioner argues that this Court is required to review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Agency's findings. The Commissioner contends that in line with *Wilkins*, this Court can, and should, evaluate the new evidence to determine whether the ALJ's decision is supported by substantial evidence.

"New evidence" is evidence which is not duplicative or cumulative. Evidence is "material" if there is a reasonable possibility that it would have changed the outcome. *Wilkins*, 953 F.2d at 96. When the Appeals Council incorporates new evidence into the record, the Court must review the record as a whole including the new evidence. *Id.* To the extent that my decision in *Hawker* is read as having departed from the standards for review of new evidence set forth in *Wilkins*, by mandating that a remand must always follow whenever the Appeals Council fails to explain how it evaluated new evidence presented to it, regardless of whether this evidence could have changed the outcome when considered with the evidence produced before the ALJ, it should no longer be followed, as *Wilkins* does not

2. The ALJ found Ms. Waters' ability to perform the full range of light work was diminished by the following: "no climbing of ladders, ropes, and scaffolds; no hazardous heights and no hazardous moving machinery; no exposure to extreme temperature changes; no concentrated exposure to dusts, fumes, chemicals, poor ventilation, or excessive wetness or excessive vibration. The claimant has a need for low stress routine work {i.e., work that requires no more than moderate attention and concentration and persistence and pace for prolonged periods}; no more than occasional climbing of stairs and ramps and no more than occasional balancing, stooping, or crouching, kneeling; with a preclusion as to work that requires crawling. The claimant experiences moderate {as defined} pain; and moderate limitations in terms of performing activities within a schedule & maintaining regular attendance and being punctual within customary tolerances; and moderate limitations as to completing a normal work day or work week without an unreasonable length and number of rest periods." (Tr. 37–38).

require such an automatic remand, and it is controlling.

The new evidence in this case consists of Exhibits AC–1 through AC–4. (Tr. 14, 220–528). Exhibit AC–1 contains over 250 pages of the Claimant's medical records dated January, 2003 through 2004 from St. John's Episcopal Hospital. (Tr. 220–508). Exhibit AC–2 is Claimant's medical records from Greater Baden Medical Services dated March, 2004 through July, 2004.(Tr. 509–528). Exhibit AC–3 is Claimant's medical records from Dimension Healthcare Systems dated July, 2004, through September, 2004. (Tr. 522–526). Finally, Exhibit AC–4 is a letter from Claimant she submitted to the Agency dated September 2, 2005.

This appeal focuses primarily on Exhibits AC–1 through AC–3. Claimant argues that this evidence shows the treatments she received for her various conditions, including the diagnosis of chronic pain syndrome, polyarthritis involving her wrists and elbows, AC joints, and her left Achilles. She also contends the records support her argument that her uncontrolled hypertension, degenerative changes to her shoulder, and her depression all resulted in additional limitations that were not properly considered by the ALJ in determining her RFC and ability to perform light work. *See* Plaintiff's Memorandum pp. 5–6 and Response to Defendant's Motion, pp. 11–13.

The Commissioner argues that this new evidence consists of treatment related paperwork that does not describe the severity of Ms. Water's impairments, and does not show a deterioration or change in her hypertension or arthritis that would have changed the ALJ's decision. *See* Def. Mem. pp. 27–29. For the reasons that follow, I am not persuaded by the Commissioner's arguments.

At the hearing and in his decision, the ALJ noted that there was limited medical documentation in this case. (Tr. 63–64, 33, 35). After review of the new evidence, there is no question that the various doctor's records and opinions specifically relate to the time period at issue, and I find there is a reasonable possibility the new evidence would have changed the outcome.

Throughout the newly submitted evidence are medical records confirming the Claimant's diagnosis and treatment for depression, including various doctor's notes that Ms. Waters was prescribed Prozac. (Tr. 227, 263, 305,366,385, 389, 392–393, 444, 461, 496). For example, the Claimant's treating physician noted in 2004, that Claimant was "tired all the time", had "no appetite", and reported being "unable to do daily chores". (Tr. 366, 379). The records also document Ms. Waters' diagnosis of polyarthritis involving her wrists, elbows, and AC joints. (522–523).

This evidence was dismissed by the Appeals Council without explanation beyond the statement that it did not provide a basis for changing the ALJ's decision. Plaintiff argues that this evidence, at a minimum, shows additional limitations and that these impairments were severe, and therefore render the ALJ's RFC finding inadequate.

Irrespective of the newly submitted evidence, there is also evidence that was before the ALJ regarding Claimant's allegation of depression but it was not properly discussed by the ALJ in his decision. For example, Claimant alleged in 2003 that she suffered from depression, but the ALJ never discussed depression in his decision. (Tr. 157). When a claimant alleges disability due to a mental condition, the Commissioner **must** follow a special technique set forth in 20 CFR § 404.1520a, and the Listing of Impairments (*Mental Disorders 12.00* )(emphasis added). The ALJ failed to document adequately whether he applied the technique set forth in 20

CFR § 404.1520a. There was no discussion in the text of the decision documenting the application of the technique and/or the ALJ's own specific findings as to the degree of limitation in **each** of the four areas of functioning described in paragraph (c) of 404.1520a: activities of daily living; social functioning; concentration, persistence and pace; and episodes of decompensation. *See Baker v. Chater,* 957 F.Supp. 75, 79 (D.Md.1996)(in evaluating the severity of mental impairments a special procedure must be followed by the Commissioner at each level of administrative review).

This error alone warrants a remand, however there is more. In finding that Ms. Waters' fibromyalgia was not severe at step two, the ALJ stated—without citing any source—that medical information indicates fibromyalgia "may remit spontaneously" with decreased stress. (Tr. 30). There is no evidence in the record—and the ALJ does not cite any—that allows one to reasonably draw the conclusion, as the ALJ did in this case, that Ms. Waters' pain "remitted" and it therefore did not constitute a severe impairment. Furthermore, the newly submitted evidence reveals that with respect to her fibromyalgia, Ms. Waters' complaints of pain were frequently—if not consistently—present, and the doctor noted Ms. Waters' pain was "poorly controlled" in March and October of 2003, and that her pain was present as recently as July 2004. (Tr. 351, 372, 523–526).

In sum, there is evidence in this case which leads to the conclusion that Claimant had other possibly severe impairment(s) but this evidence was not considered. These errors at step two inevitably infect the analysis at the subsequent steps including steps four and five[3]. *See Brown*

*v. Barnhart,* 182 Fed.Appx. 771, 774 (10th Cir.2006) (ALJ's failure to properly consider fibromyalgia at step two impaired analysis at subsequent steps). The Court therefore finds that the ALJ failed to evaluate adequately the relevant evidence in the record that may have had a bearing on the determination of Claimant's entitlement to disability benefits. Accordingly, I am remanding this case to the Agency for further consideration.

Thus, for the reasons given, this Court DENIES the Commissioner's Motion for Summary Judgment and GRANTS Claimant's Alternative Motion for remand. A separate Order shall issue.

### ORDER

For the reasons stated in the foregoing Memorandum of same date, it is this 18th day of July, 2007 hereby **ORDERED**.

1. that Defendant's Motion for *En Banc* Consideration (Paper No. 18) and Defendant's Motion for Consolidation (Paper No. 19) are both **DENIED**;

2. that Defendant's Motion for Summary Judgment (Paper No. 17) is **DENIED**;

3. that Plaintiff's Motion for Summary Judgment or in the alternative, Motion for Remand (Paper No. 12), is **PARTIALLY GRANTED**;

4. that the decision of the Commissioner is **REVERSED** and the case is **REMANDED** under the fourth sentence of 42 U.S.C. 405(g), for the institution of further proceedings in accordance with the foregoing Memorandum;

5. that this Order constitutes a judgment for the purpose of seeking attorney's

---

**3.** Claimant also argues that the ALJ's findings at steps four and five are unsupportable. However the Court finds that the ALJ failed to adequately consider all of the Claimant's alleged impairments at step two and this error inevitably infects the analysis at the remaining steps of the sequential evaluation. Therefore the Court need not address the propriety of the ALJ's additional findings at this time.

fees under either 42 U.S.C. 406(b) or 28 U.S.C. 2412(d) (1) (EAJA); and

6. that the Clerk is directed to **CLOSE** this case.